## APPEAL OF STAUFFER CHEMICAL CO.

Docket No. 1429. Submitted August 1, 1925. Decided October 12, 1925.

1. Certain corporations *held* consolidated.

2. Under section 234 (a) (8) of the Revenue Act of 1921, a corporate taxpayer is not entitled to a deduction for the calendar year 1918 for amortization of property used in the production of articles contributing to the prosecution of the war when it is shown that claim therefor was first made on April 27, 1924.

*M. Manning Marcus, Esq.*, for the taxpayer.
*Percy S. Crewe, Esq.*, for the Commissioner.

Before MARQUETTE and LITTLETON.

This is an appeal from the determination of a deficiency in income and profits tax of the taxpayer and the Union Phosphate Co., held by the Commissioner to have been affiliated for the calendar year 1918 in the amount of $33,757.12, arising from an alleged erroneous increase of net income, errors in the computation of inadmissible assets and invested capital, denial of the claim for a deduction of $40,815.75 as amortization of war facilities, and the claim that, in addition to the Union Phosphate Co., the taxpayer was affiliated with the Stauffer Oil Co., Summit Copper Co., and California Nut Products Co.

### FINDINGS OF FACT.

The taxpayer is a California corporation, with principal office at San Francisco, engaged in the manufacture and sale of chemicals.

The taxpayer alleged in its petition that the net income for the taxable year, inclusive of dividends but exclusive of adjustments claimed on account of amortization and affiliation, was $299,637.63, instead of $335,707.63, as set forth in the deficiency letter mailed November 11, 1924. The consolidated net income of the taxpayer and the Union Phosphate Co. for the calendar year, as set forth in the revenue agent's report, was $290,514.59.

Taxpayer alleged in its appeal that the Commissioner erroneously computed the inadmissible assets and that his computation thereof should be revised as set forth in subparagraph 2 of its petition, as follows:

2. That the inadmissible assets should be revised to the extent set forth in paragraph 2 of assignments of error, namely:

|  | Dec. 31, 1917. | Dec. 31, 1918. |
|---|---|---|
| Inadmissible assets (RAR) (Treasury Department letter Nov. 11, 1924) | $1,169,894.03 | $1,257,350.60 |
| Total assets (RAR) | 2,937,898.48 | 3,112,004.23 |
| Add— |  |  |
| (a) Depreciation adjustment allowed over revenue agent's report (this adjustment was subtracted in (f) of schedule 5 on page 3 of Treasury Department letter of Nov. 11, 1924) | 64,412.23 | 17,595.31 |
| Automobile charged to expense disallowed | | 447.16 |
| (b) Land purchased with stock in 1916 written off and not reflected in "Total assets" at beginning of computation (allowed in audit of 1917 return) | 62,500.00 | 62,500.00 |
| (c) Land installment purchase carried at net figure in "Total assets" (allowed in audit of 1917 return) | 59,500.00 | 53,500.00 |
| (d) Adjustment to calendar year | 108.09 | |
| Total | 3,124,418.80 | 3,246,046.70 |
| Deduct— |  |  |
| Adjustments per corrected balance sheets | 39,722.09 | 41,888.81 |
| Total assets per corrected balance sheets | 3,084,696.71 | 3,204,157.89 |

This computation is subject to any further necessary adjustment made necessary by allowance of claims for amortization of war facilities and consolidation with other corporations.

The following stipulation was filed at the hearing:

It is stipulated and agreed by the attorneys for the respective parties that, first, the revenue agent's report may be introduced in evidence and considered by both parties.

Second, that the income for the calendar year 1918, as computed in the revenue agent's report, noted later, shall be used as the taxable income of the above companies.

Third, that the deduction in income on account of the depreciation sustained shall be as indicated in said revenue agent's report, except that depreciation at a rate of 12½ per cent per annum on the cost of the Los Angeles and Eastern plants shall be allowed as a deduction, instead of the rate of 7½ per cent, as allowed in said revenue agent's report.

Fourth, that the total assets as indicated in subparagraph 2 of the statement of facts, constituting the claimant's basis of appeal, incorporated in the petition, shall be used in computing the adjustment to invested capital, on account of inadmissable assets.

Fifth, the invested capital, as computed in the deficiency letter dated November 11, 1924, shall not be disturbed, except as indicated herein for the adjustment of inadmissible assets.

Sixth, The Stauffer Chemical Co. and the Union Phosphate Co. first made a request for amortization in a brief executed April 27, 1924, and subsequently filed with the Commissioner. No claim has ever been filed with the Commissioner in the detail required by Article 189 of Regulations 45 or Regulations 62.

During the period from October, 1917, to June, 1918, taxpayer constructed certain buildings and installed therein certain machinery and equipment to be used for the production of articles contributing to the prosecution of the war, to wit, chloride of calcium solution and solid calcium chloride. On July 18, 1918, it entered into a contract with the Hercules Powder Co., subject to the rules and regulations of the United States Government, for the delivery of a minimum of 30 tons of chloride of calcium solution and solid calcium chloride per month for a period expiring September 1, 1919. On December 2, 1918, taxpayer received notice of the cancellation of this contact. After working up the raw material on hand, taxpayer closed its plant on January 3, 1919. The character of the buildings, machinery, and equipment, their total cost, residual value in use in a going business, and the balance claimed to have been subject to amortization before the deduction for exhaustion, wear and tear, were as follows:

| Description of property. | Total cost. | Estimated value in use in going business. | Balance |
|---|---|---|---|
| 1. Buildings | $40,084.01 | $10,021.00 | $30,063.01 |
| 2. Boiler plant | 5,325.31 | | 5,325.31 |
| 3. Muriatic-acid machinery and plant | 25,906.97 | 12,953.48 | 12,953.49 |
| 4. Calcium chloride machinery and plant | 12,135.89 | | 12,135.89 |
| 5. Tank cars (muriatic acid) | 1,601.50 | | 1,601.50 |
| Total | 85,053.68 | 22,974.48 | 62,079.20 |

The Stauffer Oil Co. is a California corporation, organized by the taxpayer, with a capital stock of the par value of $100,000, for the purpose of producing fuel oil. The entire output of this corporation was used by taxpayer. During the taxable year the stockholders and the amount issued to each, eliminating qualifying shares, were as follows:

|  | Shares. | Per cent. |
|---|---|---|
| Stauffer Chemical Co | 60, 000 | 60 |
| C. de Guigne, president of both corporations | 20, 000 | 20 |
| Thomas H. Larkins, superintendent Stauffer Oil Co | 20, 000 | 20 |

At the time the stock was issued to Larkins, in May, 1909, he paid in $5,000 and endorsed the stock in blank to the taxpayer, to be held in escrow and voted by it under an arrangement whereby Larkins should receive any dividends paid on the stock, but, in the event the oil company should prove unsuccessful, the taxpayer should protect him from any loss. Other than the $5,000 paid in by Larkins, no property or money was paid in by any one other than the taxpayer. The stock issued to Larkins has been held and voted by taxpayer since the date of its issuance. The officers of taxpayer and of the Stauffer Oil Co. were the same and all clerical and office expenses were paid by taxpayer.

The California Nut Products Co. is a California corporation, having a capital stock of 1,928 shares, par value of $100 each, of which 1,082 shares were owned by taxpayer, the remaining 886 shares being owned by outside interests. This company was under the management of the taxpayer. From time to time the taxpayer made loans to this company for the purpose of enabling it to carry on its business.

The Summit Copper Co. is also a California corporation, having a capital stock of 1,000 shares, with a par value of $100 each, which, during the taxable year, were owned as follows:

Shares.
Stauffer Chemical Co _____ 395
Charles Kunze_____ 100
Phillippe de Tristan _____ 500
C. de Guigne, Jr_____ 5

This company was organized by taxpayer. During the taxable year Charles Kunze was superintendent of the mines. Up to December 31, 1918, he had paid nothing on the stock issued to him and it was subsequently acquired by the taxpayer. This stock, at the time of its issuance to Kunze, was endorsed by him in blank to the Stauffer Chemical Co. and during the taxable year it was held and voted by taxpayer. Phillippe de Tristan is the son-in-law of C. de Guigne, president of taxpayer, and at all times has been a resident of Paris,

France. The stock standing in his name was a gift from C. de Guigne, who has always voted the same and paid all assessments thereon. C. de Guigne, Jr., who owned five shares of the stock of this company, was a stockholder of the taxpayer and the son of its president. The officers of the taxpayer managed the affairs of this corporation without compensation from it. Its accounts were kept in the books of account of the taxpayer and the taxpayer paid all clerical and office expenses.

### DECISION.

The deficiency should be computed in accordance with the foregoing findings of fact and the following opinion. Final determination will be settled on consent or on 15 days' notice, under Rule 50.

### OPINION.

LITTLETON: The stipulation set forth in the findings of fact disposes of the issues raised by the petition relating to the computation of net income, inadmissible assets, invested capital, and deduction for exhaustion, wear and tear of property used in the business. This leaves for determination only the question relating to amortization and affiliation.

Taxpayer alleged in its petition that, in addition to the companies mentioned in the findings of fact, it was affiliated with the San Francisco Sulphur Co. and the Russell Borate Mining Co. At the hearing, however, it withdrew its claim for affiliation with these two companies.

Section 234 (a) (8) of the Revenue Act of 1918 provided for the allowance of amortization in respect of property used for the production of articles contributing to the prosecution of the war. This section contained no provision as to the time or manner in which a claim for amortization should be made. Section 234 (a) (8) of the Revenue Act of 1921, approved November 23, 1921, provided:

In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the war against the German Government, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of such war, there shall be allowed, for any taxable year ending before March 3, 1924 (if claim therefor was made at the time of filing return for the taxable year 1918, 1919, 1920, or 1921) a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous acts of Congress as a deduction in computing net income. At any time before March 3, 1924, the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the income, war-profits, and excess-profits taxes for

the year or years affected shall be redetermined and the amount of tax due upon such redetermination, if any, shall be paid upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 252.

This taxpayer made no claim for amortization in its returns for either 1918, 1919, 1920, or 1921, but first made claim therefor in its brief filed with the Commissioner on April 27, 1924, in protest of the additional tax proposed to be assessed. The Commissioner denied the claim upon the ground that the allowance thereof was barred under the provisions of section 234 (a) (8) of the Revenue Act of 1921. Taxpayer contends that, as it had filed a waiver consenting to the determination and assessment of its income and profits taxes for the calendar year 1918 beyond the statutory period of five years, its right to an allowance of a deduction for amortization is not affected by the provisions of section 234 (a) (8). We are of the opinion that the taxpayer's contention is not well taken. There is nothing in the Revenue Act of 1921 to indicate that Congress intended a claim for amortization to be governed by the limitation within which the Commissioner might make an assessment. Congress certainly had the right to prescribe the time within which tax payers might make claims for amortization of war facilities and to bar all claims not made within such time. It did not prescribe any period of limitation in the Revenue Act of 1918, but in the Revenue Act of 1921 it amended section 234 (a) (8) of the Revenue Act of 1918 by inserting the provision "if claim therefor was made at the time of filing return for the taxable year 1918, 1919, 1920, or 1921." There is no room to doubt the intention of Congress in this provision. The Board can not go beyond the plain provisions of the statute, and the action of the Commissioner in denying taxpayer's claim for amortization, which was filed on April 27, 1924, is approved.

The next issue relates to the question of whether the taxpayer, Stauffer Oil Co., Summit Copper Co., and the California Nut Products Co. were affiliated during the taxable year 1918. The stock of the Stauffer Oil Co. was owned directly by the taxpayer and its stockholders, with the exception of 20 per cent, which stood in the name of Thomas Larkins, an employee of the Stauffer Oil Co. This stock, however, had been endorsed by Larkins to the taxpayer and held and voted by it from the date it was issued until acquired outright subsequent to the taxable year. The stock of the Summit Copper Co. was owned directly by the taxpayer and its stockholders, with the exception of 100 shares issued to Charles Kunze, superintendent of the mines of the Summit Copper Co., 500 shares issued to Phillippe de Tristan, a resident of Paris, France, and a son-in-law of C. de Guigne, president, and a large stockholder of the taxpayer. The stock standing in the name of Kunze had been issued to him

prior to the taxable year in order that he might participate in any profits which that company might make. He paid nothing for the stock and at the time it was issued to him he endorsed it and turned it over to the taxpayer which has held and voted it since that time. The 500 shares standing in the name of Phillippe de Tristan were purchased by C. de Guigne, president of the taxpayer, and transferred as a gift to de Tristan in order that any dividends thereon might be paid to him. During the taxable year these 500 shares were voted by C. de Guigne.

From the evidence submitted, we are of the opinion that the taxpayer, the Stauffer Oil Co., and the Summit Copper Co. were affiliated during the calendar year 1918. *Appeal of Boston Structural Steel Co.*, 1 B. T. A. 602; *Appeal of Schloss Bros. Co.*, 1 B. T. A. 581; *Appeal of Wright Cake Co.*, 2 B. T. A. 58; and *Appeal of Edward Rose Co.*, 2 B. T. A. 341.

No evidence has been submitted showing any control by taxpayer, or its affiliated interests, over the 45 per cent minority stockholdings of the California Nut Products Co. The fact that the taxpayer managed its affairs and loaned it money from time to time is not alone sufficient to warrant affiliation.